UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -v-

CASE NO: 5:20-CR-0317 (DNH)

CARLO DI PADOVA,

               Defendant.

### SENTENCING MEMORANDUM OF CARLO DI PADOVA

DATED: May 10, 2021

Respectfully submitted,

LISA A. PEEBLES
Federal Public Defender
Bar Roll No. 507041
Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, New York   13202
(315) 701-0080

1

## PRELIMINARY STATEMENT

On February 25, 2021, Carlo entered a guilty plea to the indictment charging him with Mailing a Threatening Communication and Impeding, Intimidating, and Interfering by Threat.  Sentencing is currently scheduled for June 6, 2021.

Carlo is already serving a sentence of 16-life for a state robbery conviction. Unfortunately, while incarcerated, he became heavily addicted to heroin.  Under the stress of incarceration and under the influence of a substance that transformed his mental state, Carlo wrote a threatening letter to a United States Senator.  He regrets this conduct and would never have done this if he was in his right state of mind.  Carlo was punished for his conduct by being placed in isolation for 2 months (waiting on records for this).  Then, he was brought out of his state facility where he has been for the last 5 years and brought to Albany County Jail during the COVID-19 pandemic for federal prosecution.

In light of these circumstances and the factors discussed below, Carlo respectfully requests that the Court impose a below guideline sentence to run concurrently with his state sentence.

## PSR OBJECTIONS

The defense objects to the application of the Chapter Four Enhancement set forth in paragraph 22 of the PSR. The Report applied the career offender guideline of 24 rather than the base offense level of 12. The probation department determined that the instant offense constitutes a crime of violence. However, the defense

2

maintains that a violation of 18 U.S.C. Section 876(c) is not a crime of violence for purposes of triggering the career offender guideline.

To determine whether conviction of § 876(c) is a crime of violence under § 4B1.2(a)(1) and *Johnson v. United States,* 559 U.S. 1331(2010), requires examination of the elements of the offense and not "the particular facts underlying" the conviction, thus applying a categorical approach. *See Descamps v. United States*, 570 U.S. 254, 261 (2013). The question is whether a violation of 18 U.S.C. § 876(c) has as an element the "threatened use of [violent] physical force against the person of another." See § 4B1.2(a)(1); *Johnson,* 559 F.3d at 139. Under the categorical approach an offense can qualify as a "crime of violence" only if all of the criminal conduct it covers – "including the most innocent conduct" - matches or is narrower than the Guidelines' "crime of violence" definition. *See United States v. Torres-Miguel* (4th Cir. 2012). If § 876(c) "sweeps more broadly" than the § 4B1.2(a) definition, "a conviction under it is not a career offender predicate." *United States v. Brown* (3d Cir. 2014). Section 876(c) is not a crime of violence because a conviction under this statute encompasses convictions that do not necessarily include violent physical force.

"The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. 4B1.2(a)(1). The statute of conviction, 18 U.S.C. §876(c) states:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or *any threat to injure the person of the addressee or of another*, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C.A. § 876 (West).

A conviction is a crime of violence under the force clause if "the minimum criminal conduct a defendant must commit to be convicted" under the statute " 'has as an element the use, attempted use, or threatened use of physical force.' " *United States v Moore,* 916 F.3d 231, 240 (2d Cir. 2019) (quoting U.S.S.G. § 4B1.2(a)(1)). The threat of physically injuring a person, even threat of "serious bodily injury or death", does not necessarily require a threat to use violent force against that person or the use of violent force. *See United States v. Torres- Miguel*, 701 F.3d 165, 169 (4th Cir 2012) (analyzing California state threat statute and noting that a threat to poison is a threat to injure without using violent physical force).[1] *See also United States v. Perez-Vargas* (10th Cir. 2005)(although Colorado assault statute required act causing bodily injury by means of deadly weapon, imposing injury does not necessarily include use or threatened use of physical force, so not categorically a crime of violence).

To determine whether an offense qualifies as a "crime of violence" under the Guidelines' force clause, courts employ a categorical approach "that asks whether the least of conduct made criminal by the state statute falls within the scope of" the force clause at issue. *United States v. Genao*, 869 F.3d 136, 144-45 (2d Cir. 2017) (Guidelines force clause). If there is a "realistic probability" that the statute at issue proscribes conduct that does not involve the use of physical force, then the statute is not a categorical crime of violence. *United States v. Hill*, 89 F.3d 51, 56 (2d Cir. 2018) (internal citations and punctuation omitted) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). As relevant here, there must be a realistic

---

[1] In *United States v. Castleman*, 134 S. Ct. 1405, 1409 (2014), the Supreme Court overruled *Torres-Miguel* to the extent that it found that force need not be directly applied to the body of the victim in order to be considered a "use" of force. As applied to DiPadova's sentence however, *Castleman* left untouched the distinction in *Torres-Miguel* between a use of force and a result of physical injury, and that "a crime may result in death or serious physical injury without involving use of physical force." 701 F.3d at 168.

4

probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence.

Section 876(c) merely references a threat to injure a person. Such a threat is far broader than a threat to use physical force against the person of another. What matters in terms of the "use" of physical force is that "the defendant must have knowingly and intentionally caused an injury that can result only from the use of physical force" against the person of another. *United States v. Scott*, 990 F.3d 94, 111 (2d Cir. 2021). The threat contemplated in a section 876(c) conviction can be readily interpreted to include a threat of emotional or psychological harm, not just physical harm. While the term "person" can be understood as the physical body, it also can generally refer to an individual. If the term person is interpreted to mean an individual, then the statute is logically read to encompass threats of psychological, emotional, and reputational harm against the recipient of the threat.  A conviction under section 876(c) would include conduct that does not categorically meet the definition of "crime of violence" as it may include conduct that does not entail the use of physical force against the person of another.

Thus, without relying on additional factual analysis, § 876(c) is simply, without more, a non-active "fear" statute, not an actively employed "force" statute. The elements of the federal crime are not the same as or narrower than the definition of "crime of violence, the threat to injure portion of § 876(c) is overbroad.

Mr. DiPadova's offense level is properly scored at 18 rather than 24. With acceptance of responsibility, his guideline imprisonment range should be 30-37 months not, 77-96.

## **ARGUMENT**

## I.   **Legal Standard**

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing.  While courts must continue to consider the sentencing guidelines, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a).[2]  As the Supreme Court made clear in *Kimbrough* and *Gall*, the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553(a).

In two more summary reversals, the Court further clarified that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors.  *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009), 2009 WL 129044 (Jan. 21, 2009).  "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson*.  2009 WL 160585, at *1.  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not be presumed reasonable." Id. At *2.  In other words, a sentencing court may not rely on the Sentencing Guidelines range as a

---

[2] Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. §3553(a).

default to be imposed unless a basis exists to impose a sentence inside that range. Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a).

II.  **Imposing a Below Guideline Sentence is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

   a.  **Mr. Di Padova's Personal History and Characteristics**

Carlo is 62 years old and grew up in Brooklyn, New York in the 1960's.  He was apart of a tight knit but poor family who did not have much but were happy. Carlo grew up at an infamous time for a couple different reasons.  First, he grew up during the civil rights movement, which had an enormous impact on his community.  He often witnessed the protests and riots and that occurred at his high school and in the community.  Second, Carlo grew up in the same Italian community where some of the most notorious mobsters were in charge.  Carlo and his peers looked up to these men as their role models.  For Carlo, he particularly observed and desired the fancy cars and clothing that they would display.

Carlo began drinking and experimenting with drugs when he was only 15 years old.  He dropped out of high school in the 10th grade and never obtained his diploma.  His criminal history began when he was only 16 years.  With the exception of 8 years from 2008-2016, Carlo has spent almost his entire life incarcerated.  Every charge until the instant offense has involved theft.  Similar to the instant offense, Carlo was drunk and high during the commission of his prior offenses and nobody was physically harmed (double check this with PSR).

When Carlo was released from jail at the age of 20, he was able to find gainful employment.  He first worked for his uncle in his restaurant in Brooklyn. He then was able to work in construction with the local 20 union.  He worked on the Battery Park project in New York City.   Carlo got married in 1987 but is now separated from his ex-wife.  She has a son, who he helped raise and thinks of as his son.  Carlo is still in contact with his son, who is now in his 40's and has a successful real estate company.

Unfortunately, it was also at this time that he became heavily addicted to heroin and began using a few times a week.  This led to another charge and he served the next several years in some of the harshest state prisons in New York.  He was stabbed while incarcerated on two different occasions, including while he was serving time at the Attica Correctional Facility.  He was able to use drugs while incarcerated as it was not difficult to obtain them in these facilities.

When he was released in 2008, Carlo made a commitment to getting clean and sober.  He began using suboxone, which helped him stay clean for the next 8 years.  It is clear from his criminal history that during the time he was sober, he had no charges and no law enforcement contact.  He worked as an auto mechanic from 2010-2016 and basically learned on the job as he had no certifications.  He was dedicated to this job and worked 12 hours a week.  Unfortunately, he relapsed in 2016 and as a result is now serving a sentence of 16-life.

Carlo has one daughter, who he is in contact with occasionally.  His past periods of incarceration have undoubtedly had a strain on their relationship.

### b. Nature and Circumstances of the Offense

Mr. Di Padova has accepted full responsibility for this offense.  His remorse is reflected in his early guilty plea and in his statement in the pre-sentence report. Carlo was under the influence of heroin when he wrote the threatening letter.  He had no intentions of carrying out any harmful actions towards the Senator and he was incarcerated when he sent the letter through the mail.  He was clearly not in his right state of mind as he mailed the letter using the jail correspondence system. He had no intentions of hurting anyone and clearly no capabilities of doing so.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Carlo has been adequately deterred for his conduct.  As stated above, he had to serve a two-month period of isolation while at the Comstock Correctional Facility for this conduct.  Isolation is a severe punishment as all the inmate's privileges are suspended until the sanction is complete.  Inmates in isolation can only leave their cell for one hour per day and are not permitted visitation.  Carlo was isolated for 60 days, with no privileges, and no communication with the outside world. (John is getting records to verify this).

Carlo was then brought out of this facility where he has resided for 5 years and brought to the Albany County Jail for federal prosecution.  Being transferred to a differently facility where you have grown accustomed to the procedures is already difficult.  However, doing this during a global health pandemic is arduous and frightening.  Carlo is not a young man and was susceptible to increased risk if he

were to contract the virus.  He had to endure being in further isolation when he arrived at the facility and then another 45-day lockdown period recently after there was a COVID-19 outbreak at the facility.[3]  These collateral consequences should be considered an important part of the §3553(a) factor analysis.  *United States v. Nesbeth*, 188 F.Supp.3d 179 (E.D. New York 2016) (ruling that a court should consider collateral consequences when fashioning a just sentence); *see also United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.").

Carlo will not be a danger to the community because he is already serving a sentence of 16-life.  Carlo is still 11 years away from being considered for parole. Due to this new offense, it is likely that he will not be considered for parole at the 16-year mark.

There are not many past similar cases in this jurisdiction, however there are a couple that are comparable where a below guideline sentences were imposed. In *United States v. Giridhar Sekhar*, the Court sentenced Mr. Sekhar to 15 months of imprisonment after he was convicted after going to trial for sending threats and extortion emails to expose an extra marital affair to the Attorney General for the State of New York in exchange for a 35 million dollar contract.  1:10-CR-573 (TJM). In that case, the defendant's sentencing guideline range 15-21 months, however Mr. Sekhar's actions were calculated as he had time to write and send several email

---

[3] https://www.timesunion.com/news/article/Albany-County-jail-goes-on-lockdown-after-15884361.php

communications.  Most notably, unlike Mr. Di Padova, Mr. Sekhar did not accept responsibility and had a five-day trial insisting that he was innocent. *Id.*[4]

Furthermore, in *United States v. Robert Seifert*, the Court sentenced the defendant a time-served sentence (which was approximately 12.5 months of incarceration), even though he faced a guideline range of 63-78 months.  1:16-CR-237 (MAD).  In that case, Mr. Seifert called the Veterans Crisis Line and threatened to kill everyone at the Veteran's Administration.  Based on his threat, the VA went into "Code Black," which included setting up a perimeter around the facility. Similar to Mr. Di Padova, Mr. Seifert was also under the influence of drugs and was not in his right state of mind.

## <u>CONCLUSION</u>

For the reasons stated above, Mr. Di Padova respectfully requests that the Court impose a below guideline sentence to run concurrently to his state sentence. He also requests that he return to state custody to serve his sentence.

---

[4] The government argued that the applicable guideline range should have been 97-121 months under a different set of guidelines that ultimately were not applied but that accounted for the extortion factors surrounding the offense conduct.

11

DATED: May 10, 2021

By:    LISA A. PEEBLES
       FEDERAL PUBLIC DEFEDER
       Bar Roll No. 507041
       Clinton Exchange, 3rd Floor
       4 Clinton Street
       Syracuse, New York   13202
       (315) 701-0080

To:   Emily Waters, AUSA