IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   5:20-CR-317 (DNH) |
| ) | |
| **v.** ) | Government's Sentencing Memorandum |
| ) | |
| **CARLO DI PADOVA,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

The United States of America (or "government"), by and through its counsel of record, the United States Attorney for the Northern District of New York, respectfully asks the Court to impose upon the defendant a term of imprisonment of between 77 to 96 months followed by a one- to three-year term of supervised release. The Government contends that this "Guidelines" sentence is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553.

## I.    INTRODUCTION

On February 25, 2021, the defendant pled guilty to a two-count indictment, charging him with mailing a threatening communication, in violation of 18 U.S.C. § 867(c), and impeding, intimidating, and interfering with the performance of a United States Senator while engaged in performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B). The defendant is scheduled to be sentenced on June 16, 2021. He has been in federal custody since November 19, 2020, upon a writ of habeas corpus, from the New York State Department of Corrections and Community Supervision (NYSDOCCS).

## II.   FACTUAL BACKGROUND

The government adopts the facts as set forth in the Presentence Investigation Report ("PSIR") prepared by the United States Probation Office ("U.S. Probation"). Dkt. No. 16. As described in the PSIR, the defendant was indicted after he sent a threatening letter through the mail to a sitting United States Senator. PSIR ¶¶ 6-10. The letter, which was postmarked January 23, 2019, bore the defendant's name, NYSDOCCS inmate identification number, and a return address of the Auburn Correctional Facility in Auburn, New York. *Id.* ¶ 6. The letter, after addressing the Senator by name, stated:

> YOU LEFT WING BLEEDING HEART LIBERAL. YOU'RE A FUCKIN DISGRACE TO OUR COUNTRY. YOU AND THAT PIECE OF SHIT PILOSIE. YOU DESERVE EACH OTHER. YOUR PUTTING OUR COUNTRY AT RISK EACH DAY BY NOT FUNDING THE WALL! START LOOKING OVER YOUR SHOULDER, BECAUSE I'M GONNA HAVE SOMEONE SHOOT YOU IN THE HEAD. IN THE MEANTIME, CHOKE ON THIS.

*Id*. The letter enclosed a white powder—presumably the "this" referred to in the phrase "choke on this." *Id*. The letter was intercepted during processing at the U.S. Senate Mail Facility in Landover, Maryland. *Id*. All operations at the Senate Mail Facility were halted until the powder could be tested to rule in or out the presence of a hazardous substance. *Id.* ¶ 7. The shutdown lasted for an hour and forty minutes, although the white powder found in the envelope was analyzed by the FBI and determined to be an antibiotic prescribed to the defendant, Metronidazole, rather than a dangerous biological agent. *Id.* ¶ 9. The defendant admitted at his change of plea hearing to sending the above-described letter and white powder to the victim Senator.

### III.     APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**A. Statutory Maximum and Minimum Sentences**

The defendant's conviction subjects him to the following statutory maximum and minimum penalties:

<u>Count One (18 U.S.C. § 876(c) – Mailing a Threating Communication)</u>:

Maximum term of imprisonment: 10 years, pursuant to 18 U.S.C. § 876(c).

Maximum Fine: $250,000, pursuant to 18 U.S.C. § 3571(b).

<u>Count Two (18 U.S.C. § 115(a)(1)(B), (b)(4) – Interfering, Impeding, and Intimidating by Threat)</u>:

Maximum term of imprisonment: 10 years, pursuant to 18 U.S.C. § 115(b)(4).

Maximum Fine: $250,000, pursuant to 18 U.S.C. § 3571(b).

<u>Supervised Release (Both Counts)</u>: Not more than three years. *See* 18 U.S.C. § 3538(b)(2).

The defendant is also required to pay, for each count, a special assessment of $100, due and payable at or before sentencing, *see* 18 U.S.C. § 3013, for a total of $200. The government agrees with U.S. Probation that the defendant does not have the ability to pay. PSIR ¶ 82. As such, the government moves to remit the special assessment as uncollectable.

**B. Guidelines Provisions**

   **1. Grouping**

The counts of conviction are grouped under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") §3D1.2(a) because they involve the same victim and same act or transaction. *See* U.S.S.G. §3D1.2(a); PSIR ¶ 15.

## 2. Offense Level

Under the 2018 federal sentencing guidelines, the "base offense level" for the defendant's conviction for violating 18 U.S.C. § 876(c) and 115(a)(1)(B) is 12. U.S.S.G. §2A6.1(a)(1); PSIR ¶ 16.

## 3. Victim Related Adjustment

The offense level should be increased by six levels because the victim is a government officer or employee, the offense of conviction was motivated by such status, and the applicable guideline arises under Chapter Two, Part A of the Guidelines. U.S.S.G. §3A1.2(a), (b); PSIR ¶ 18.

## 4. Chapter Four Enhancement

The government agrees with U.S. Probation that, under the Guidelines, the defendant qualifies as a "career offender." The defendant was well over 18 at the time the offenses of conviction were committed; each offense qualifies as a "crime of violence" under U.S.S.G. §4B1.2(a); both crimes carry a potential term of imprisonment of over a year; and the defendant has two prior felony convictions for "crimes of violence," to wit: a 2017 conviction for Robbery in the Second Degree (Displays What Appears to be a Firearm) and a 1996 conviction for Robbery in the First Degree (Displays What Appears to be a Firearm). Accordingly, the resulting offense level is 24. PSIR ¶ 22.

The defendant argues that he is not a "career offender" under the guidelines. Dkt. No. 17 at 3-4. Although the defendant does not dispute that his 2017 and 1996 convictions are qualifying crimes under U.S.S.G. §4B1.1(a) and §4B1.2(a), he argues that the guideline enhancement does not apply. Relying on a Fourth Circuit case, *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), the defendant argues that one of the instant crimes of conviction, 18 U.S.C. § 876(c),

is not a "crime of violence" since it could be possible to be convicted under the statute for conduct that does not necessarily include violent physical force. *Id*. at 3.

The defendant is incorrect that he is not a "career offender." First, the defendant makes no argument at all concerning whether 18 U.S.C. § 115(a)(1)(B) is a "crime of violence"—thus, he appears to concede that it is. Such omission is revealing because, in criminalizing "threat[ening] to assault, kidnap, or murder," all conduct covered by the provision falls within the scope of "physical force" required to find a statute is categorically a "crime of violence." This is because, in *United States v. Castleman*, 572 U.S. 157 (2014), the Supreme Court made it clear that the term "physical force" means "the degree of force that supports a common-law battery conviction—namely offensive touching," *id.* at 168, which (germane to this case in particular) would include "'administering a poison or by infecting with a disease, or even by resort to some intangible substance' such as a laser beam." *Id.* at 170.

Additionally, the defendant's reliance on *Torres-Miguel* is misplaced. First, *Torres-Miguel* addresses whether a California crime for making a threat to commit a crime "which will result in death or great bodily injury to another," 701 F.3d at 167, rather than 18 U.S.C. § 876(c), is a "crime of violence." Setting aside whether the two statutes are sufficiently similar so as to render *Torres-Miguel*'s holding applicable to the defendant, the case predates *Castleman*. And, although the Second Circuit has not addressed the question, even pre-*Castleman*, most Circuits to have considered the issue have determined that 18 U.S.C. § 876(c) is in fact a "crime of violence." *See United States v. Chapman*, 866 F.3d 129, 135-136 (3d Cir. 2017) (analyzing 18 U.S.C. § 876(c) and concluding that it is a "crime of violence"); *id*. at n. 7-8 (observing that four other Circuits had also found Section 876(c) to be a "crime of violence" and rejecting post-*Castleman* reliance on *Torres-Miguel*). Because the defendant's instant offenses are both felonies

and "crimes of violence," and there is no dispute that he has two prior qualifying predicate convictions, the defendant is a "career offender" under U.S.S.G. §4B1.1.

### 5. Acceptance of Responsibility

The government moves for a two-level downward adjustment to the defendant's offense level for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a). PSIR ¶ 23. The government also moves for an additional one-level downward adjustment pursuant to U.S.S.G. §3E1.1(b), to credit the defendant for having "assisted authorities in the investigation and/or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitted the government and the court to allocate their resources efficiently." PSIR ¶ 24. This total downward adjustment of three levels results in a total offense level of 21. *Id*. ¶ 25.

### 6. Criminal History Category

The government agrees with the determination in the PSIR that, were it not for his status as a "career offender," the defendant's criminal history category would be IV, but that he falls into category VI, pursuant to U.S.S.G. §4B1.1(b)(5), because he is a "career offender." PSIR ¶ 48.

### 7. Term of Imprisonment

As described above, the adjusted offense level is 21 and the criminal history category is VI. Accordingly, the Guidelines advise that the defendant may receive a sentence of 77 to 96 months of imprisonment. PSIR ¶ 84.

    8. **Fine**

The Guidelines advise that a fine of between $15,000 and $150,000 is appropriate. U.S.S.G. §5E1.2(c)(3); PSIR ¶ 97. The government agrees with U.S. Probation that the defendant does not have the ability to pay a fine. *Id*. ¶ 82.

    9. **Supervised Release**

The Guidelines indicate that, following his release from prison, the defendant should face a supervised release term of between one and three years for each offense. U.S.S.G. §5D1.2(a)(2); PSIR ¶ 91. Multiple terms of supervised release run concurrently. 18 U.S.C. § 3624(e).

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

The government respectfully requests that the Court sentence the defendant to a term of imprisonment of between 77 to 97 months to be followed by a term of supervised release of between one and three years. The Guidelines sentence that the government recommends is sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a).

First, the nature and circumstances of the offense support a Guidelines sentence. *See* 18 U.S.C. § 3553(a)(1). The defendant's conduct is serious: he mailed a letter containing a white powder any reasonable person would conclude could be a biological agent such as anthrax, further threatening to have someone shoot a sitting Senator in the head. Worse, the defendant made the threat because he disapproved of the Senator's performance in carrying out his Senatorial duties. The defendant's conduct constituted a threat not only to the Senator but to a democratic institution; our society cannot function if those carrying out their official duties have to fear physical harm or violence from those who dislike their policies. Moreover, due to the reasonable concern that the letter contained a biological agent, the U.S. Senate Mail facility was

unnecessarily shut down for nearly two hours to conduct a HAZMAT response, and the employees processing the mail had to fear exposure to a dangerous substance.

Second, a within-Guidelines sentence would reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment and deterrence, protect the public, and be consistent with the types of sentences available for the offense. *See* 18 U.S.C. § 3553(a)(2). As the Supreme Court has observed, "in the ordinary case, the [Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see, e.g.*, *Gall v. United States*, 552 U.S. 38, 46 (2007) (Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Accordingly, it may be presumed that a sentence within the Guidelines range of between 77 and 97 months would be appropriate to reflect the seriousness of the offense and provide adequate punishment, deterrence, public protection, and consistency in sentencing. Finally, a "within-Guidelines" sentence promotes Congress's goal in enacting the Sentencing Reform Act; to wit, "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Last, the government recommends that the Court impose the special conditions recommended by Probation in the PSIR. *See* Dkt. No. 16 at 25. The recommended conditions are "'reasonably related' to [] statutory factors governing sentencing, 'involve[] no greater deprivation of liberty than is reasonably necessary' to implement the statutory purposes of sentencing, and are consistent with pertinent [U.S.S.G.] policy statements." *United States v. Myers*, 426 F.3d 117, 123-24 (2d Cir. 2005) (quoting 18 U.S.C. § 3583(d)). Specifically, the special conditions require the

defendant to participate in substance abuse evaluation, counseling, and treatment, and to refrain from contacting the victim of the offense without first obtaining approval from U.S. Probation.

Based on the nature of the defendant's conviction and as described further in the PSIR, the defendant has a history of perpetrating criminal acts involving threats of violence while under the influence of narcotics. Given the apparent connection, therefore, between the defendant's substance abuse issues and his criminality, requiring him to address his drug and alcohol use makes sense as a means to prevent him from reoffending. Moreover, it is consistent with the Crime Victim's Rights Act, 18 U.S.C. § 3771, to prohibit the defendant from contacting the victim. *See* 18 U.S.C. § 3771(a)(1), (b) ("In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded" right "to be reasonably protected from the accused.") Accordingly, in this case, the recommended special conditions fall within the ambit of the U.S.S.G. policy statements, and the Government requests that the Court impose the conditions after placing on the record the Court's reasons for so doing.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a Guidelines sentence of 77 to 97 months of imprisonment to be followed by a one to three year term of supervised release with the conditions recommended in the PSIR. There is no reason to depart from a sentence in the recommended Guidelines range, and the requested sentence achieves the goals of Section 3553(a).[1]

---

[1] The government reserves the right to respond to defense arguments raised for the first time after filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. *See* Fed. R. Crim. P. 32(i)(1)(c), 32(h). Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office

Respectfully submitted this 26th day of May 2021,

ANTOINETTE T. BACON
Acting United States Attorney

By: /s/ Emily C. Powers

Emily C. Powers
Assistant United States Attorney
Bar Roll No. 5139205

## CERTIFICATE OF SERVICE

    I hereby certify on May 26, 2021, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the defendant.

/s/ *Emily C. Powers*